The New York Life Insurance and Trust Company, as Trustee for the Benefit of Nellie B. Cary, Respondent, *v.* Hamilton W. Cary, Individually and as Administrator of the Estate of Nellie B. Cary, Deceased, et al., Appellants and Respondents, and The Farmers' Loan and Trust Company of the City of New York, as Trustee under the Will of Jabez A. Bostwick, et al., Respondents and Appellants.

1. Personal Property — Reversion of Trust of Personal Property to Grantor — Estate in Expectancy — Owner's Power to Grant and Convey Estate in Expectancy. Where a trust deed conveying personal property reserves to the grantor the reversion of the trust fund in the event of the death of the beneficiary, leaving no issue, such reversion constitutes an estate in expectancy (Real Property Law, L. 1896, ch. 547, § 26), which "is descendible, devisab'e and alienable in the same manner as an estate in possession" (Real Property Law, § 49), and the owner of such expectant estate·is empowered to deal with the same in all respects as he might if he were actually in possession of the property representing the estate.

2. Trust of Personal Property — Reversion of Trust Fund to Residuary Estate of Grantor — Testamentary Disposition Thereof by Grantor — When Trust Deed and Will Must Be Construed Separately — Validity of Will. A testator in his lifetime conveyed certain certificates of stock to a trust company by a trust deed directing such trustee to hold the certificates during the lifetime of testator's daughter, and pay her the income thereof; if she should die without issue, the trust to cease and the certificates to revert to and be delivered to the testator or his estate, but if she should leave issue, then the certificates, or the proceeds thereof, to be distributed to her issue equally.

**3**

The testator subsequently died leaving a last will by which he divided his residuary estate into three equal parts; one part was given to a trust company to receive the income thereof and pay the same to testator's wife during her lifetime, upon her death to pay the same to testator's said daughter during her life and upon the death of said wife and daughter to distribute the principal of said trust to the issue of said daughter in equal shares or, in default of such issue, to her next of kin; one part was given to another trust company with similar provisions for his wife and another daughter; and one part was given to a third trust company with similar provisions for his wife and son. The daughter died several years after her father, intestate and leaving no issue, so that the certificates of stock conveyed to the trust company for her benefit reverted to and became a part of testator's estate, and, being embraced in no specific bequest, became a part of his residuary estate. *Held,* that the trust deed and the will were separate and independent instruments, differing essentially in character and purpose; that the trust deed was not testamentary in its nature, but took effect immediately upon its delivery to the trustee, accompanied by a transfer of the property therein mentioned, so that all the rights that testator's daughter ever acquired in the trust fund she acquired at that moment and without any postponement of the enjoyment thereof until the death of said testator; and that, consequently, the will and the trust deed must be construed separately, and, so construed, the validity of the testamentary disposition of said trust fund, as part of testator's residuary estate, was not affected by the trust deed.

*N. Y. Life Ins. & Trust Co.* v. *Cary,* 120 App. Div. 264, reversed.

(Argued December 20, 1907; decided January 21, 1908.)

Cross-appeals from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered July 15, 1907, which modified and affirmed as modified a judgment of Special Term construing the will of Jabez A. Bostwick and certain trust deeds executed by him.

The facts, so far as material, are stated in the opinion.

*James F. Horan* for Farmers' Loan and Trust Company, as trustee, appellant and respondent. The trust deeds and the will cannot be read together. They are distinct and separate instruments. The residuary trusts created by the will are all valid dispositions of the testator's reversions in the funds covered by the trust deeds. (L. 1896, ch. 547, §§ 29, 49, 82, 89; *Henderson* v. *Henderson,* 113 N. Y. 1; *Genet* v.

*Hunt,* 113 N. Y. 158; *Livingston* v. *N. Y. L. Ins. & T. Co.,* 13 N. Y. Supp. 105.)

*William Pierrepont Williams* and *Lanman Crosby* for Hamilton W. Cary, as administrator, appellant and respondent. For the purpose of applying the statute against undue suspension, the will must be treated as if it embraced the provisions of the trust assignment. (*Starnes* v. *Hill,* 16 S. E. Rep. 1016; *Graff* v. *Bonnett,* 31 N. Y. 18; *Gott* v. *Cook,* 7 Paige, 535; *Manice* v. *Manice,* 43 N. Y. 382; *Campbell* v. *Foster,* 35 N. Y. 371; *Emmons* v. *Cairns,* 10 Barb. 244; *Ward* v. *Ward,* 105 N. Y. 75; *Moore* v. *Littel,* 41 N. Y. 85; *Schettler* v. *Smith,* 41 N. Y. 334; *Oxley* v. *Lane,* 35 N. Y. 344; *Mansbach* v. *New,* 58 App. Div. 197.)

*Charles E. Buckingham* for Albert C. Bostwick et al., appellants and respondents. The will and the trust deed should not be construed together. (*Livingston* v. *N. Y. L. Ins. & T. Co.,* 13 N. Y. Supp. 105.)

*Frank L. Polk* for Marion B. Carstairs et al., appellants and respondents. The trust deed and the will are independent instruments. Expectant estates are alienable in the same manner as estates in possession. (L. 1896, ch. 547, § 49; *Livingston* v. *N. Y. L. Ins. & T. Co.,* 59 Hun, 622.)

*Egerton L. Winthrop, Jr.,* for Fannie E. Francis, appellant and respondent. The deed of trust and the will of Jabez A. Bostwick should be read together. (*Fowler* v. *Ingersoll,* 127 N. Y. 472; *Herzog* v. *T. G. & T. Co.,* 177 N. Y. 86; *Purdy* v. *Hayt,* 92 N. Y. 446; *Dana* v. *Murray,* 122 N. Y. 604; *C. T. Co.* v. *Egleston,* 185 N. Y. 31; *Schettler* v. *Smith,* 41 N. Y. 328; *Haynes* v. *Sherman,* 117 N. Y. 433; *Underwood* v. *Curtis,* 127 N. Y. 523; *Robb* v. *Washington College,* 103 App. Div. 353; *Von Hesse* v. *MacKay,* 136 N. Y. 114; *Genet* v. *Hunt,* 113 N. Y. 158.)

*George L. Shearer* for United States Trust Company of New York, as trustee, appellant and respondent.

*George F. Chamberlain* and *William R. Wilder* for Albert C. Bostwick, respondent. For the purpose of applying the Statute of Perpetuities the trust deed and will should be construed together as constituting a single disposition of the property. (L. 1897, ch. 417, § 2; L. 1896, ch. 547, § 46; *Matter of Bostwick*, 160 N. Y. 489.)

*Ward B. Chamberlain* for Helen C. Bostwick, respondent and appellant. Construing the trust deed and the will together, the residuary trusts for the life of the widow are valid and must be sustained. (*Henderson* v. *Henderson*, 113 N. Y. 1; *Van Schuyver* v. *Mulford*, 59 N. Y. 426; *Kennedy* v. *Hoy*, 105 N. Y. 134.)

Willard Bartlett, J.   This suit was brought by the New York Life Insurance and Trust Company, as trustee, under an instrument executed by the late Jabez A. Bostwick, and as trustee under his will, to obtain a judgment settling its accounts as such trustee, and determining the manner in which the assets of the trust estate should be distributed.

The trust instrument (which, following the example of counsel, I shall call a trust deed, although it relates solely to personal property) was executed and delivered by Mr. Bostwick on January 13, 1892. It assigned to the New York Life Insurance and Trust Company one thousand shares of Standard Oil Trust certificates to hold during the lifetime of Mr. Bostwick's daughter, Nellie Bostwick Morrell, and provided that if she should die without leaving a child or children the trust should cease and the certificates should revert and be delivered to Mr. Bostwick or his estate; but that if at the death of his daughter she should leave issue, then the trustees should distribute the said certificates or the proceeds thereof to said issue equally. The trust deed further provided that the trust might be terminated by Mr. Bostwick at any time during his natural life by his giving to the trustee a notice in writing of his desire to terminate the same. Mr. Bostwick died on August 16, 1892, leaving a will which pro-

vided that his entire residuary estate should be divided into three equal parts. These parts were devised and bequeathed as follows: One was given to the New York Life Insurance and Trust Company in trust to receive the income therefrom and pay the same to the testator's wife, Helen C. Bostwick, during her life, and upon her death to pay the same to his daughter, Nellie Bostwick Morrell, during her life, and upon the death of said wife and daughter to distribute the principal to the issue of Nellie Bostwick Morrell in equal shares, or in default of such issue to her next of kin. One part was given to the United States Trust Company in trust to receive the income and pay the same to the testator's wife, Helen C. Bostwick, during her life, and upon her death to pay the same to his daughter, Fannie E. Bostwick, during her life, and upon the death of said wife and daughter to distribute the principal to the issue of Fannie E. Bostwick in equal shares, or in default of such issue to her next of kin; and one part was given to the Farmers' Loan and Trust Company in trust to receive the income and pay the same to the testator's wife, Helen C. Bostwick, during her life, and upon her death to pay the same to his son, Alfred C. Bostwick, until he should arrive at the age of twenty-one, and then to distribute one-half of the principal to the said Albert C. Bostwick and to continue to pay him the income from the other half during his life, and upon the death of the said son to distribute all of the principal then remaining to the issue of said Albert C. Bostwick in equal shares, or in default of such issue to his next of kin.

Nellie Bostwick Morrell, the daughter for whose benefit the trust deed was made, subsequently married Hamilton W. Cary and became known as Nellie Bostwick Cary. She died intestate on January 19th, 1906, leaving no issue. Her husband, however, survives her and is the administrator of her estate.

The property conveyed to the New York Life Insurance and Trust Company by the trust deed for the benefit of Nellie Bostwick Morrell was not embraced in any specific bequest contained in Mr. Bostwick's will; and consequently it has

become a part of his residuary estate by reason of the death of the daughter without issue.

The question presented for our determination is whether the disposition which Mr. Bostwick attempted to make of this personal property involved a suspension of the absolute ownership thereof such as is forbidden by the statutes of this state. The learned judge who heard the case at Special Term held that it did not. A majority of the members of the Appellate Division reached a different conclusion. It appears to have been conceded throughout the litigation that neither the trust deed nor the will, if considered by itself, would operate to suspend the absolute ownership beyond the term fixed by the statute, but the learned Appellate Division held that the deed and will must be read together as indicating a general scheme, and that thus read they created an unlawful suspension of the absolute ownership of the personal property in question.

It is difficult to find anything to sustain this view as to the relationship of these two instruments either in the facts of the case or in the rules of law applicable to the construction and interpretation of the deed of trust. There is no finding by the trial court to the effect that the deed and will were executed in furtherance of a scheme to tie up the fund for a longer period than that permitted by the law, as is suggested in the prevailing opinion at the Appellate Division; nor do the contents of the instruments themselves necessarily indicate any such intent. I am equally at a loss to find any warrant for the conclusion that although the deed and will were executed at different dates "they both speak from the same moment, to wit, the death of Mr. Bostwick." Whatever may have been accomplished by the trust deed was accomplished immediately upon its delivery to the trustee, accompanied by a transfer of the property therein mentioned. All the rights that Nellie Bostwick Morrell ever acquired in the trust fund she acquired at that moment. There was no postponement of the enjoyment of those rights until the death of Mr. Bostwick. This view is not inconsistent with anything this court said in *Matter of Bostwick* (160 N. Y. 489), in which case it was

determined that this trust deed did not constitute an absolute gift of the grantor's property so as to exempt the transfer from taxation. It is perfectly true, as Judge Gray then said, that it was not an "out and out gift;" but nevertheless it became instantly effective, upon its execution and delivery and the transfer of the property, to vest the beneficiary with a right to the income thereof, which could only be divested by the exercise of the power of revocation reserved to the grantor. It has been expressly decided by this court more than once that the presence of a full power of revocation in an instrument of this character does not render it testamentary. (*Robb* v. *Washington and Jefferson College,* 185 N. Y. 485, 493.) In the case cited, Chief Judge Cullen clearly points out the distinction between a testamentary instrument and a deed, in correction of a misapprehension which has frequently misled the courts on this subject; and what he said is as applicable to the case at bar as it was to the instrument there under consideration. Furthermore, it appears to me that we should disregard a sound principle of construction if we held that two instruments not necessarily connected must be read together with the result that their provisions become invalid, where there is no question of their validity if the instruments be considered separate and apart from one another. This would amount to nothing less than construction for the sake of destruction.

Premising then that the trust deed was not testamentary in its nature and that it took effect at or about the date of its execution, January 13, 1892, what were the rights of Mr. Bostwick, the grantor therein, in respect to the property which was the subject-matter of the trust? The deed reserved to him the reversion thereof in the event of the death of the beneficiary leaving no issue. This was an estate in expectancy (Real Property Law, Laws of 1896, ch. 547, § 26, formerly R. S. pt. 2, ch. 1, tit. 2, § 9, § 35). But an expectant estate "is descendible, devisable and alienable in the same manner as an estate in possession." (Real Property Law, § 49, R. S. as above cited, § 35.) Does the word "alienable" in this statu-

tory provision empower the owner of an expectant estate to deal with the same in all respects as he might if he were actually in possession of the property representing the estate, or is the term used in the statute in a restricted sense and only as enabling the owner of an expectant estate to convey merely his expectancy and not to deal with the property represented thereby as if he were its absolute owner?

This question has been answered twice by the courts of this state; once by the General Term of the Supreme Court in the first department in an opinion expressly approved by this court (*Livingston* v. *N. Y. Life Ins. & T. Co.*, 36 N. Y. S. R. 506; Same Case, *sub nom. McCurdy, Exr.* v. *Same*, 151 N. Y. 667); and again by this court itself in *Genet* v. *Hunt* (113 N. Y. 159). In the *Livingston* case two brothers owned reversions in a trust fund for the benefit of their mother during the joint lives of their mother and her husband. They executed a trust deed to the trustee of the fund whereby they conveyed to the trustee their expectant estates upon conditions which would result in suspending the absolute ownership during both their lives. The General Term, speaking through VAN BRUNT, P. J., upheld the right of the brothers under section 35 of the Revised Statutes (now § 49 of the Real Property Law) to dispose of their expectant estates as they had done, notwithstanding the fact that the result might be to suspend the absolute ownership of the trust estate during two additional lives beyond that of the original beneficiary, saying : " The person in whom an expectant estate is vested has the same control over the interest which he thus possesses as though he were in actual possession of the property representing the estate. He may deal with it in precisely the same manner."

In *Genet* v. *Hunt* (*supra*) the trust deed under consideration was made by Caroline M. Field in contemplation of her marriage with George S. Riggs, its purpose being to secure to her the income of her property during the marriage free from the control of her husband and to secure the principal to her if she survived, or in the event of her death to her appointees

by will or to her heirs.   After declaring that the deed created
a valid trust for the joint lives of Mrs. Riggs and her husband,
Judge Andrews, who wrote for a majority of the court,
observes :   " If Mrs. Riggs remained the absolute owner of the
property after the execution of the trust deed subject only to
the estate of the  trustees for her life the trusts in the will
would be valid.   *The reversion in the case supposed would be
property which she could grant or devise and limit future
estates thereon in her discretion, subject only to the restriction
that they must vest in absolute ownership within two lives in
being at their creation.*"   Judges Earl, Finch and Peckham
concurred in this opinion.   Judges Gray and Danforth dis-
sented, but placed their dissent on a ground which neces-
sarily involved concurrence in the correctness of the proposi-
tion which I have quoted from the opinion of Judge Andrews.
Chief Judge Ruger did not vote.

We have here a clear and unequivocal expression of opinion
upon the question of law which is the turning point in the
case at bar.   It may be said that it was not absolutely neces-
sary to a determination of the appeal ; but it was germane to
the consideration and discussion of the issues involved and it
undoubtedly represents the deliberate conclusion of this court
as then constituted upon the meaning and effect of the statute
declaring what are the qualities of expectant estates.   It is in
precise accordance with a previous judicial utterance by the
appellate branch of the Supreme Court made through one of
the ablest lawyers who ever sat upon that bench.   It seems to
me to be the natural, if not the necessary, interpretation of
the statutory provision.   And if so, I do not see why we should
hesitate to follow it simply because it has not the same
authority as it would have if a determination of the precise
question had been essential to the determination.

The views which I have expressed lead to the conclusion
that the learned court at Special Term was right in treating
the trust deed and the will as separate instruments differing
essentially in their character and in holding that the validity
of the testamentary disposition of the trust property as a part

of the testator's residuary estate was not affected by the deed of trust. It must freely be conceded that this conclusion permits the owner of an expectant estate in personal property to suspend the absolute ownership for more than two lives in being by means of different instruments; but this result is by no means so alarming in contemplation as counsel seem to apprehend. Most attempts to suspend the absolute ownership of personal property for more than two lives in being or to evade the rule against perpetuities applicable to real estate are made by means of wills rather than by means of deeds; and a will, whatever its form, can never be more than one instrument in the view of the law. At most, even through the agency of trust instruments relative to estates in expectancy, the absolute ownership can be suspended only during lives *in being* and this was permitted by the common law. The question involved in this case is one of technical law pure and simple, and as Professor Gray has well said in his work on the Rule of Perpetuities: " In no part of the law is the reasoning so mathematical in its character; none has so small a human element."

The judgment of the Appellate Division should be reversed and that of the Special Term affirmed, with costs to all parties appearing in this court and filing briefs, payable out of the fund.

CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT, HAIGHT, WERNER and HISCOCK, JJ., concur.

Judgment accordingly.